## Jaekel, Appellant, *v.* Caldwell.

[Marked to be reported.]

*Principal and agent—Sale of land by agent—Revocation of agency—Recovery—Quantum meruit.*

An agent employed to sell land, whose authority has been revoked, may recover from his principal, upon a quantum meruit, the expenditures which he has been encouraged to make in effecting the sale, and compensation for his labor and time.

Argued April 21, 1893.    Appeal, No. 373, Jan. T., 1893, by plaintiff, Frederick Jaekel, from judgment of C. P. Blair Co., Oct. T., 1888, No. 14, on verdict for defendant, Israel C. Caldwell.    Before STERRETT, C. J., GREEN, MITCHELL and THOMPSON, JJ.

Assumpsit by agent against principal to recover for labor, time and expenditures in trying to sell land.

The facts as they appeared at the trial, March 23, 1892, before WICKHAM, P. J., of the 36th judicial district, specially presiding, are stated in the opinion of the Supreme Court.

The agreement between plaintiff and defendant was as follows:

"We agree that F. Jaekel shall sell our coal lands in White and Clearfield townships, Cambria county, containing 3168 acres.    He is to pay to us the sum of two hundred thousand dollars without regard to the price he sells for, on payment of which sum we are to execute to purchaser a good and sufficient deed.    We reserve all the timber specified in agreement with A. J. Reynolds as well as hemlock saw-timber, surface and all other timber to pass by deed."

A supplemental contract simply referred to the timber.

The last amended statement, referred to in the opinion of the Supreme Court, was as follows:

" Now, March 23, 1892, plaintiff moves to amend statement filed in this case by averring that defendant received from the sale of the land in question an amount exceeding $333,333.10 for his share. Plaintiff further avers that he had, prior to the revocation of this authority to sell, procured a purchaser to take this land at $350,000. He therefore avers that his damages sustained is the one half of the difference between $350,000 and $215,000, amount which he was to pay Dean and Caldwell, or if the court should be of the opinion that the amount at which said purchaser offered to take said land is not the criterion to determine the damages, this plaintiff avers that the measure of his damages is the compensation for his time, trouble and expenses, in, at the instance of defendant and John Dean, endeavoring to sell the land in question, and plaintiff avers that the amounts so expended by him exceeded $50,000, and that his time and labor amounted to, or was worth an additional $20,000, and that defendants should pay one half of said amounts."

The court charged in part as follows:

" [The construction placed by the court on these contracts prevents the plaintiff from recovering in this action, unless he has established the fact, that he found a purchaser for the land, willing and able to pay Dean and Caldwell more than the sum of $215,000, in cash. The burden of proving this fact rests on the plaintiff. It is his duty to make it clear to you by the weight or preponderance of the evidence. If he has failed to do this, he can recover nothing. If he has shown that he obtained a bona fide customer, that is, one able and willing to pay more than $215,000, and informed Judge Dean of that fact before his authority to sell was revoked, he would be entitled to recover from the defendant one half of the excess over $215,000, together with interest from time of demand, provided—I was going to say—that the defendant authorized or ratified the written agreements on which the suit is based; but his counsel have conceded that he did authorize Judge Dean to make these agreements, or at least ratified them after they were made, and it is not necessary to discuss that question farther.] [1]

" [Now, gentlemen, I instruct you, that there can be no compensation whatever allowed the plaintiff for time, services or

money expended in mere efforts to develop and sell the land. Neither the defendant nor Judge Dean agreed, in the writings declared upon, to pay the plaintiff anything unless he actually made a sale at a price exceeding $215,000. He undertook to sell the land on a contingent commission; he took his chances and, without some other contract than that set forth in these agreements—and there is none other before you—all the risks would be his. If, on the principle of ' Nothing risked, nothing won,' he spent his time and money on a mere speculation, he, of course, could not make the defendant repay his losses. Every day men make such contracts; some of them gain and some of them lose. Doing business in this way, while legitimate enough, is still somewhat of a lottery; and the man who goes into it must take his chances.] [2] [In the present case the landowners were incurring no liability whatever, as they could revoke the plaintiff's authority at any time before he had found a pur-. chaser. If the plaintiff desired to protect himself more fully, he could have provided in the contract that the property should not be withdrawn from his hands before a certain period had expired; then, if his authority, before the time given had run out, was taken from him, he might recover for time, labor and money expended. That is, he would be entitled to a reasonable compensation. Since he did not provide for this, since he chose to take the chances of getting nothing or making a big profit, as he seems, according to his testimony, to have expected, he cannot hold these men, or either of them, responsible for money expended in developing that land, for time spent in trying to find a purchaser, or for the money spent in New York or elsewhere or otherwise. That was his own affair, and neither of them would be bound to compensate him. The evidence bearing on the plaintiff's expenditures and efforts in trying to sell the land is, under the pleadings in this case, only admissible and to be considered as bearing upon the question whether or not he found a purchaser.] [3] . . . .

"Now, gentlemen, to briefly recapitulate, first, if the plaintiff, at the time he alleges he sold the land, was a real estate broker, that is, was engaged in the buying or selling real estate for others in the manner already described, he cannot recover, as he admits that he had no license. [Second. If the plaintiff was not a real estate broker at the time mentioned and made

the sale in good faith to Fulton, and Fulton had the ability and was willing to pay, and the plaintiff, before his authority was revoked, notified Judge Dean of this sale, and the latter, for himself and the defendant, positively refused to make a deed or deeds and this prevented the sale from being consummated, then the plaintiff is entitled to recover the sum of $67,500, with interest from the time of demand. If you find in favor of the plaintiff, you can give no less sum than this I have just mentioned.] [6] If no sale was made, or if the purchaser was irresponsible, or did not intend to pay, that is, if the whole thing was a farce, a sham or an experiment of Sipes's, although the plaintiff may have been entirely honest in the matter himself, then no recovery can be had."

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–3, 6) instructions, quoting them; (8) answer to point recited in opinion of Supreme Court, quoting point, answer and subsequent agreement of Feb. 9, 1893, recited in opinion of Supreme Court; and (9) ruling on evidence, quoting bill of exception recited in opinion of Supreme Court.

*Martin Bell, John M. Bailey* with him, for appellant.—Jaekel could not claim that his rights under the contract were of indefinite duration, that is, that he had all his lifetime within which to make a sale. He must sell within a reasonable time, in view of all the circumstances; failing so to do, his principals could revoke his authority; but, if they revoke his authority without giving him such reasonable time, they would be liable to him in damages. The measure of such damages might not be the loss of the profit he would make on a sale; such a measure might be deemed to be speculative; but at least he would be entitled to be compensated for his reasonable labor and expense; in other words, could recover on a quantum meruit: Blackstone v. Buttermore, 53 Pa. 268; Hill v. Jones, 152 Pa. 433.

In Stitt v. Huidekopers, 17 Wal. 385, and Coffin v. Landis, 46 Pa. 426, the action was for services subsequent to the revocation of the agency.

*H. M. Baldridge, John M. Orvis* with him, for appellee.—It

is perfectly apparent, from the testimony of all the parties to the contract, that there is not a shadow of a claim for compensation on a quantum meruit—that it was never within the comtemplation of any of them that Jaekel was to be reimbursed for any expenditures he made in his attempts to sell the land, and it was never thought of by plaintiff until after his option had been revoked.

An offer to sell at a fixed price, whether accompanied with an agency to sell to others or not, may be revoked at any time prior to the acceptance of the offer, unless there is an express agreement on good consideration to accept within a limited time ; or when other acts are done which the person making the offer consents to be bound by : Stitt v. Huidekopers, 17 Wal. 385.

Where there is no limitation of the agency as to the time expressed, the principal may at any time put an end to the relation between him and his agent by withdrawing the authority, unless it is coupled with an interest or given for a valuable consideration : Coffin v. Landis, 46 Pa. 426 ; Tower v. O'Neil, 66 Pa. 332; Hartley and Minor's Ap., 53 Pa. 212.

What is meant by a power coupled with an interest is defined as an interest in the thing itself on which the power is to be exercised, and not an interest in that which is produced by the exercise of that power: Hunt v. Rousmanier, 8 Wheat. 201.

The case of Blackstone v. Buttermore, 53 Pa. 268, on which appellant relies, is entirely different in its circumstances. In that case there was a revocation before the 1st of May and by its terms it was irrevocable before that time. Within the time the agent made an agreement to sell, and the purchaser from the agent, who had notice of the revocation, brought an eject- ment to recover the property ; no question was raised about the principal's liability to his agent, as the agent was not a party to the suit, and what was said about the principal's liability to him was but an obiter dictum.

Hill v. Jones, 152 Pa. 433, cited by the appellant, has no analogy to this case. There was in that case an agreement for a fixed time.

The question of reasonable time was one of law for the court: Leaming v. Wise, 73 Pa. 173.

OPINION BY Mr. JUSTICE THOMPSON, July 19, 1893 :

The question raised in this case is whether the appellant was entitled to recover upon a quantum meruit. The solution of it will. be found in the pleadings and the evidence. The original statement filed in 1888 contained common counts for goods sold and delivered, for work and labor done, for money advanced and laid out, for money had and received for use of appellant, and for money due on an account stated. An amendment was filed, and set forth that in 1881 Judge Dean and appellee were joint owners of a tract of coal land consisting of 3168 acres, and desiring to sell this tract they employed appellant to act as agent for negotiating a sale, and for his compensation for the work and labor of effecting the sale, agreed to give him any sum above the price of $200,000 for which he might sell it. That this agreement, together with one amending it as to certain timber on the lands and increasing the price to $215,000, was signed by Judge Dean for himself and appellee. That upon the faith of this agreement he expended money and advertised the same ; that in order to make a market he projected a railroad to the tract, and expended large sums of money in its organization and in raising money to build it ; that while he was thus actively engaged in making a sale, with every prospect of success, the appellee and his co-owner, without notice to appellant, sold the lands to a coal company for a sum exceeding $315,000 ; that Judge Dean paid to appellant his share of the compensation due to him, amounting to $26,000, and that appellee has refused to pay his share of such compensation. Subsequently he filed another amended statement in which he avers that appellee received for the land an amount exceeding $333,333.10 for his share ; that previous to the revocation of the authority to sell he had procured a purchaser at the price of $350,000, and avers his damages to be the one half difference between $215,000 and the $350,000, or if the court be of opinion that the price at which the purchaser was to take the lands is not the measure of damages, he then avers his damages to be computed for his time, trouble, and expense, and specifying the length of time and the amount he has expended.

Upon the trial the appellant elected to go to trial upon the last amended statement, and offered " to prove by the witness

on the stand that in order to sell this land it became necessary to construct a railroad to the land, that the defendant encouraged him to interest himself in having such a railroad built, that he did interest himself in having such a railroad built, that his time and expenses in having this railroad built aggregated the sum of $20,000, and that he was encouraged by the defendant and Judge Dean to promote the construction of the railroad with a view of enabling a more ready sale of this land." The offer was refused upon the ground that it was not alleged in appellant's statement as a ground of recovery.

The learned judge refused to charge as follows: "If after Mr. Jaekel's first effort to sell, it was found impossible, without exposing the coal by shafts and drifts, and he was encouraged by his employers to engage miners for the purpose and spent thirteen months in such work, and expended his money therein and labor in the supervision of the work, and if then, finding that a sale could not be effected until a railroad was made, he was again encouraged by his employers to devote his time, efforts, and money for that purpose in order that he might effect a sale after its construction, he would still be entitled to a reasonable time thereafter to make a sale, and if they then, believing it more advantageous for them to form a coal and coke company and convey to it, revoked his authority within the limit of such reasonable time, he would be entitled to recover the amount of his reasonable expenditures and the reasonable value of his services." "Because it attempts to establish a basis for a recovery not set forth in the plaintiff's statement of his claim."

After the trial, at the suggestion of the court, by agreement, appellant was allowed to amend his statement nunc pro tunc, and the amendment made was as follows, viz.: " And now, to wit, February 9, 1893, at the suggestion of the court, it is agreed that the plaintiff shall be permitted to amend his statement, nunc pro tunc, as of March 24, 1892, by alleging the several matters hypothetically stated in the point submitted by the plaintiff's counsel, at the trial. And it is further agreed, the court assenting, that the refusal of the said point shall not be considered as resting on the reason assigned therefor, by the court, at the trial, but shall be deemed to be based solely on the other reasons set forth in the opinion this day filed, overruling the motion for a new trial, namely, that the facts hypothetically

set forth in said point were unsustained by evidence. The purpose of this agreement is to enable the plaintiff, if he so desire, to have the case fully reviewed in the Supreme Court, on all its alleged and real merits."

As the court refused a new trial it is manifest that, for the purpose of this case, assuming the pleadings as amended contained a sufficient averment, a refusal of the point was intended. With the pleadings so amended this was error. If these facts had been found by a jury, and there was evidence from which they might so have found, under these pleadings the appellant would have been entitled to a recovery. The owners of the property employed appellant to sell their lands. Judge Dean testified: "The first one employed to sell the land was appellant; it was a verbal arrangement, and they gave appellant authority to dispose of the land; that he demanded a paper because as he alleged parties doubted his authority to sell, and what had existed in parol before that was reduced to writing after consultation with Mr. Caldwell, the appellee." The appellant testified: "That Judge Dean wanted him to sell the land and that he went to New York to do so, and upon his return he went to Judge Dean and said to him: 'I can't do anything down there, I have nothing to show that I am authorized to sell the land,' and the reply was, 'We will remedy that right straight,' and the agreement was given." This agreement, dated August 20, 1881, first recites: "We agree that appellant shall sell our coal lands," and is distinctly an authority to sell, and "he is to pay to us the sum of $200,000 without regard to the price he sells for; on payment of such sum we are to execute a good and sufficient deed."

It is clear he was employed to sell the lands, and the measure of his compensation was to be any sum in excess of that mentioned. It was an agreement making him an agent with full authority to sell, and fixing the basis of compensation. No time was fixed for the consummation of the sale, and the appellant began to devote his entire time to his employment, going back and forth from New York, and advertising in different papers. That up to April, 1886, whenever appellant was at home, which was at least once a month, appellee called upon him to inquire what appellant was doing in regard to the sale. Appellant employed men to open the mine, and on one occasion took ap-

pellee to see the work. That in order to make a market for the land he organized a railroad company. This railroad was begun in 1884 and was completed in 1886. That in that year he took some miners to the land and cleaned out the mines, with a view to an examination by experts. In July, 1886, he says he made an agreement to sell the lands to John Fulton. When he returned home for the purpose of having a deed executed he learned from Judge Dean that the authority to sell was revoked. Judge Dean said afterwards so far as he was concerned he would settle with him, and accordingly paid him the sum of $26,000 in full settlement of any claim on this account which appellant had against him. Judge Dean testified: "That Caldwell knew about appellant's efforts to make the sale. That when he came to him in July, 1886, and stated he had made a sale, he then told him he and appellee would take the matter out of his hands. It was then he notified him his authority to sell was revoked." It is clear that this agreement contained a continuous authority to sell until revoked in July, 1886, and that on the faith of it appellant went on expending money up to that date, when he says he had secured a purchaser for the land. He was thus encouraged to spend his money and labor, and had therefore a right to assume that no revocation of his authority to sell would occur. If the appellee and his co-owner permitted appellant to go on expending the time, labor and money necessary to the accomplishment of his object, and suddenly, while he was so engaged, revoked his authority, he is entitled to be reimbursed for his outlay and to be paid for his labor and time.

In Topping v. Healey, 3 Foster & Finlason, 325, it was held that in an action by an agent who has been employed to obtain a loan, and has procured it, but it has not been accepted and received by the employer, he is entitled to recover, not necessarily the full commission, but a reasonable remuneration.

The appellant, employed to make the sale, had, upon the faith of his authority, with the knowledge and assent of the appellee, expended time and money to effect it, and having reached a point when he believed he had consummated a sale and secured a purchaser, the appellee and his co-owner revoked his authority. They without doubt had a right to revoke his authority, but, doing so, they were bound to remunerate appel-

lant for the labor and expenses incurred by appellant prior to the revocation of his authority to sell the land.

In Green v. Lucas, 31 L. T. R. 731, it is said by COLERIDGE, Chief Justice, referring to Prickett and Badger: " In that case the plaintiff was employed as the defendant's agent to sell land for commission at a given price. He succeeded in finding a purchaser at the stipulated price, but the principal declined to sell, and rescinded the agent's authority. It was held that the plaintiff was entitled to sue for a reasonable remuneration for his work and labor."

In Prickett v. Badger, 1 C. B. R. N. S. 296, WILLIAMS, Justice, said : " But I think there was evidence which was fit for the consideration of the jury, that the defendant employed the plaintiff to sell the land, upon the terms, that if he found a purchaser at the price named he was to receive a commission of one and one half per cent, and that the plaintiff bestowed his labor in endeavoring to find and did find a purchaser at that price ; but that the negotiation failed because the defendant was not prepared to come forward as a vendor, and that so the plaintiff was prevented from earning the stipulated commission. If the jury believed these facts to be established, then according to Planche v. Colburn, 8 Bingh. 14, (1 M. & Sc. 51,) and other authorities in conformity therewith, the plaintiff was entitled to abandon the special contract and resort to an action founded upon the promise which the law would infer from such a state of facts."

In Blackstone v. Buttermore, 53 Pa. 268, it is said : " If the reasons for making a sale had ceased to exist, or he should find a sale injurious to his interests, who had a right to say he should not change his mind ? The interest of the agent was only in his compensation for selling, and without a sale this is not earned. A revocation could not injure him. If he had expended money, time, or labor, or all, upon the business intrusted to him, the power itself was a request to do so, and on a revocation would leave the principal liable to him on his implied assumpsit."

In Hill v. Jones, 31 W. N. 424, [152 Pa. 433,] it is said: " As a general rule the authority of a real estate broker to sell land may be revoked at any time by his principal: Coffin v. Landis, 46 Pa. 426. If the agent has incurred expenses in con-

nection therewith, prior to the revocation of the authority, he may recover such expenses."

The appellant was employed to make the sale and in his employment he had to devote a great deal of time, perform considerable labor, and incur large expenses, and was permitted to continue to do so for a period of years. Having reached a point when he believed he had accomplished the purposes of his employment and consummated a sale, the appellee and his associate suddenly concluded to revoke his authority to sell. Such revocation however was clearly coupled with the implied promise to pay for the time, labor and expenses incurred. If so, the appellant was entitled to recover upon a quantum meruit, and the judgment is reversed and a venire facias de novo is awarded.