# Press Publishing Company, Appellant, *v.* Reading News Agency.

*Contracts—Consideration—Evidence—Parol evidence.*

1. Parol evidence is admissible to show a consideration additional to that mentioned in a written contract, where the parol evidence in no way contradicts, alters or varies the terms of the written instrument.

*Contract—Termination of contract—Principal and agent.*

2. When a contract provides that one party shall have the exclusive right to sell the product of another within a certain territory, and does not specify a definite time or prescribed conditions which shall determine the duration of the relation, it is within the power of either party to terminate it at any time; but where the contract provides that a party shall have such exclusive right as long as he faithfully and impartially conducts the business and pays his bills promptly, the other party cannot terminate the contract without giving a good and sufficient reason therefor. If it appears that the party employed had faithfully and impartially conducted the business and promptly paid his bills he cannot be discharged from his employment. In such a case evidence as to how the party had conducted the business and discharged his duties, and as to the volume of the business and the profits thereon, is admissible not only as bearing upon the right to discharge, but also upon the measure of damages for the breach of the covenant.

*Evidence—Writings—Notice to produce—Copies.*

3. Where at a trial one party calls upon the other to produce a letter and the party upon whom the demand is made merely states that he had received no notice to produce the writing and asserts that he had never received it, a copy of the letter is properly admissible.

Argued Nov. 12, 1909. Appeal, No. 208, Oct. T., 1909, by plaintiff, from judgment of C. P. Berks Co., March T., 1907, No. 74, on verdict for defendant in case of The Press Publishing Company v. Reading News Agency. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of justice of the peace.

Assumpsit for money due under a contract. Before STEVENS, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court admitted under objection and exception various offers of evidence showing the manner in which the defendant conducted the business, the volume thereof, and the profits thereon. [2–7]

Verdict for defendant with certificate in defendant's favor for $163.92, upon which judgment was entered.

*Errors assigned* were (1) in permitting defendant to show the additional consideration over and above that mentioned in the letter of April 1, 1903, quoted in the opinion of the Superior Court; (2–7) various rulings on evidence, quoting the bill of exceptions; (8–17) various instructions, quoting them.

*Charles H. Tyson,* with him *Clark A. Wick* and *Benj. F. Dettra,* for appellant, cited: Buzby v. Buzby, 30 Pa. C. C. Rep. 225; Hathaway v. Bennett, 10 N. Y. 108; Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U. S. 627 (12 Sup. Ct. Repr. 94); Coffin v. Landis, 46 Pa. 426; Peacock v. Chambers, 46 Pa. 437; Blackstone v. Buttermore, 53 Pa. 266; Boas v. Updegrove, 5 Pa. 516; Real Estate Savings Institution v. Linder, 74 Pa. 371; Wilson v. Wernwag, 217 Pa. 82; Streeper v. Williams, 48 Pa. 450; Wolf v. Studebaker, 65 Pa. 459; Pennypacker v. Jones, 106 Pa. 237; Cotton v. Wiley, 39 Pa. Superior Ct. 507; Patton v. Ash, 7 S. & R. 116; Carland v. Cunningham, 37 Pa. 228; Eilbert v. Finkbeiner, 68 Pa. 243; Jensen v. McCorkell, 154 Pa. 323; Wilson v. Wilson, 26 Pa. 393.

*Wellington M. Bertolet,* with him *Isaac Hiester,* for appellee.—Parol evidence is admissible to show other or greater consideration than that expressed in the instrument: Strawbridge v. Cartledge, 7 W. & S. 394; Jack v. Dougherty, 3 Watts, 151.

Evidence of past profits was properly admitted for the

purpose of giving the jury a substantial basis upon which to determine the value of the contract at the time of breach: Pittsburg Gauge Co. v. Valve Co., 184 Pa. 36.

Notice to the plaintiff to produce the original of a letter, the receipt and existence of which was positively denied by plaintiff's counsel before a carbon copy was admitted in evidence, is unnecessary as a preliminary to the introduction of the carbon copy: Roberts v. Spencer, 123 Mass. 397; Scott v. Bailey, 73 Vt. 49 (50 Atl. Repr. 557); Bickley v. Bickley, 136 Ala. 548 (34 So. Repr. 946); Jones v. Jones, 38 Cal. 584.

OPINION BY PORTER, J., November 21, 1910:

The plaintiff brought this action to recover for newspapers delivered to the defendant company, during the month of May, 1904. The defendant pleaded payment and set-off and introduced evidence tending to establish that it had suffered damages by reason of the breach by the plaintiff of the contract under which the relations between the parties, that of publisher of a newspaper and an agent having the exclusive sale thereof in a particular territory, had been established. The jury, after a trial, certified a balance in favor of defendant, and the plaintiff appeals.

The terms and conditions under which the defendant acquired the exclusive agency of the publications referred to were defined in an instrument of writing signed by the accredited agent of the plaintiff company and accepted by the defendant, in the following words:

"MR. F. W. CURTIS.

"DEAR SIR:—In consideration of your undertaking to handle our publications at Reading and Allentown it is understood and agreed that you will enjoy all the present privileges of news agencies and will be recognized as the exclusive agent of the publications herein mentioned for the cities of Reading and Allentown, not including the rights enjoyed by the Union News Company at stations,

as long as you faithfully and impartially conduct the business and pay your bills promptly.

"THE PRESS PUBLISHING COMPANY,

"New York World,

"Per S. J. Richardson, Circulation Manager."

The plaintiff continued to furnish the publications referred to in the schedule annexed to this paper until June, 1904, when they notified the defendant that they would not furnish the papers under the contract after the sixth day of that month, and from and after that day they did deliver the papers to another party whom they had created their exclusive agent for the sale of the publications. The defendant contends that this action involved a violation of the covenant of the contract that it should be recognized as the exclusive agent of the publications referred to, in said cities, "as long as you faithfully and impartially conduct the business and pay your bills promptly." The defendant called a witness who testified, under exception by plaintiff, as to the circumstances under which the written contract above recited was delivered by the plaintiff to the defendant. "Q. Will you state what occurred on or about April 1st, 1903, with reference to assuming the indebtedness of Walter G. Roland to the Press Publishing Company?. A. In regard to Walter G. Roland, a representative of the New York World stated that Mr. Walter G. Roland owed them $280.78. I agreed to pay this off in cash provided they would sign this paper (the agreement above quoted), turning the exclusive agency of the New York World over to us. So they accepted a check and they sent this paper accordingly, and gave us the control of the paper as long as we conducted the business impartially and paid our bills promptly." The defendant offered in connection with this testimony the check dated April 1, 1903, given to the plaintiff in payment of the $280.78 above mentioned, the indorsements upon which showed that the plaintiff company had received payment of the same. The witness testified that this check had

been delivered to the plaintiff company at the same time its agent signed the written contract, and that the money was paid "in consideration of their signing this paper." The plaintiff objected to the introduction of this testimony upon the ground that as the written agreement itself made no mention of the payment of the money, the evidence of such payment was incompetent, that the negotiations leading up to it were merged in the agreement. This oral testimony did not contradict, alter or vary the terms of the written contract. The only effect of it was to show a greater consideration than that expressed in the written instrument. The additional consideration offered to be proved did not appear to be repugnant or inconsistent with that set out in the deed, and was, therefore, such as it was competent for the defendant to establish by oral evidence: Jack v. Dougherty, 3 Watts, 151; Strawbridge v. Cartledge, 7 W. & S. 394; Watterson v. Allegheny Valley Railroad Co., 74 Pa. 208. If the testimony of this witness was true, and it was uncontradicted although the agent of the plaintiff with whom the witness had dealt was present and testified at the trial, then the offer of the defendant to pay an amount for which it was in no manner liable was upon the express condition that the plaintiff would sign the paper which became the contract between the parties, and the plaintiff, knowing this fact, accepted the money and signed the contract. The evidence as to the additional consideration was properly admitted and the first specification of error is overruled. The parties acted under this contract until June, 1904, when it was abruptly abrogated by the plaintiff. The defendant contended that this was a breach of the contract for which it was entitled to such damages as the evidence established it to have sustained. The plaintiff contends that the defendant acquired no property right in the exclusive agency to sell the publications in the cities of Reading and Allentown, and that the plaintiff had the right at any time to cancel the contract and refuse to make further deliveries of the publications to the defendant, for the reason that

the written contract provided for no definite term during which the agency should continue. When a contract provides that one party shall render service to another, or act as his agent, or have the exclusive right to sell the product of a factory within certain territory and does not specify a definite time or prescribe conditions which shall determine the duration of the relation, it is within the power of either party to terminate it at any time. Such contracts are to be construed according to their terms, and it is entirely competent for the parties to agree that they shall operate for a definite period, or that their continuance shall depend upon conditions expressed in the instrument. The situation in which the parties stand, the necessities for which they would naturally provide, the convenience they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of ambiguous contracts. When, however, the parties have clearly expressed their intention, that intention must govern. The rights of an exclusive agent for the sale of a product are subject to the conditions expressed in the agreement. When there is nothing said in regard to the time during which the agreement shall continue and nothing in its language to define the duration of the service of the party, or his employment by the defendant, then either party may terminate the relation at his will. A manufacturer or publisher may by proper covenants vest a property right in one having an exclusive right to sell his product within a given district and the agreement may either limit the right to a certain period of time or make its existence dependent upon the devotion, attention and abilities with which the agent discharges his duty: Coffin v. Landis, 46 Pa. 426; Peacock v. Chambers, 46 Pa. 437; Hathaway v. Bennett, 10 N. Y. 108; Willcox & Gibbs Sewing Machine Company v. Ewing, 141 U. S. 627. The parties to the contract with which we are now dealing, by the express terms of the writing, covenanted that the defendant should enjoy the exclusive

agency for the sale of the publications in question, "as long as you (the defendant) faithfully and impartially conduct the business and pay your bills promptly." This was a valid covenant, made by parties competent to contract, and there was no evidence that it had been induced by fraud. The parties having embodied this covenant in their contract, it must be enforced according to its terms, and it would have been error in the court below to have instructed the jury that the plaintiff had a right to end the contract at any time and without giving any reason. The plaintiff had refused to longer deliver the publications to the defendant, and the question of fact upon which the right of the publishing company to adopt this course depended was whether the defendant had faithfully and impartially conducted the business and paid its bills promptly. The parties, respectively, introduced evidence as to the manner in which the business had been conducted, and the question of fact upon which the right of the plaintiff to sever the contract relation depended was fairly left to the jury. The verdict of the jury in favor of the defendant must be accepted as determining that the defendant had faithfully and impartially conducted the business and promptly paid its bills. This being the case the action of the plaintiff involved a breach of the covenant into which it had entered.

The question of fact at issue being whether the defendant had faithfully and impartially conducted the business and promptly paid for the publications furnished by the plaintiff, evidence as to the manner in which the business had been conducted, the efforts made by the defendant to further the sales of publications furnished by the plaintiff and the manner in which the bills had been paid was certainly competent, and the specifications of error founded upon the admission of that testimony are without merit. The right of the plaintiff to annul the contract depended upon the manner in which the defendant had discharged the duty which it assumed under the agreement, and the jury could only determine whether the service of the de-

fendant had been faithful and impartial from evidence showing the manner in which the defendant had discharged its duty. If the plaintiff had wrongfully annulled the contract, the measure of damages to which the defendant was entitled was the value of the contract at the time of the breach. The value of the contract to the defendant was manifestly dependent upon the amount of profit which ought to have accrued from the performance of the contract according to its terms. Evidence as to the volume of business which was being done at the time the contract was canceled by the plaintiff and which had been done under the contract in the past and as to the profits which accrued to the defendant from such business was admissible, not as a safe measure for future profits but as pertinent to the question as to what the profits would probably have been had not the business been interrupted and as a material aid to the jury in determining the actual value of the contract to the defendant: Pittsburg Gauge Company v. Ashton Valve Company, 184 Pa. 36; Wilson v. Wernwag, 217 Pa. 82; Sedgwick on Measure of Damages, vol. 1, page 164. The specifications of error referring to the admission of this evidence are overruled.

The defendant at the trial called upon plaintiff to produce a letter written by defendant to plaintiff and mailed on June 22, 1904. Counsel for plaintiff said: "We had no notice prior to this; we do not know of its existence, never having received it." The court below then permitted the defendant to introduce testimony tending to establish that the letter had been, duly addressed to the plaintiff and mailed in the regular course of business and admitted in evidence a carbon copy of the letter, which ruling is now assigned for error. That it is improper to admit in evidence copies of papers, the originals of which are in the hands of the opposite party, without proof that such party has been notified to produce the originals, is well settled. A copy is in its nature less satisfactory evidence than the original; and when the original is in the hands of the adverse party, notice should be given to produce it,

because otherwise it cannot appear that the party offering the copy might not have had the original if he had chosen to call for it. This would seem to be a fair statement of the rule and the reason for it. That a reasonable time must be given to the opponent to account for the original, before a copy can be admitted in evidence, must necessarily follow. In determining whether the time is reasonable or not, much must necessarily be left to the discretion of the trial judge. When passing upon the question whether the notice has given an adversary sufficient time to produce the original, it is certainly proper for the court to consider whether upon the facts presented there is reasonable ground for holding that had the adversary had more time he might have produced the original. When the adversary denies the receipt and existence of the original, then the whereabouts of that document becomes an unexplained mystery and the case is virtually one of a lost instrument. When the adversary denies that he has the original in his possession and asserts that he never received it, it cannot reasonably be held that the court below abused its discretion in holding that notice at the trial to produce the original was in time: 2 Wigmore on Evidence, sec. 1203, p. 1423; Dunbar v. United States, 156 U. S. 185; Roberts v. Spencer, 123 Mass. 397; Scott v. Bailey, 73 Vt. 49; Bickley v. Bickley, 136 Ala. 548; Jones v. Jones, 38 Cal. 584. Had the plaintiff interposed an objection as to the time or manner in which the notice was given and suggested that it wished time to make search among its papers to see what it could find corresponding in any degree to the description of this letter given by the witness, there might have been merit in this specification of error. But this record discloses nothing of that kind and the specification of error is dismissed.

We find nothing in the other specifications of error requiring further discussion.

The judgment is affirmed.