## Nolle, Appellant, *v.* Mutual Union Brewing Company.

*Contract — Consideration — Mutuality — Stock subscription — Agreement to purchase products of the corporation.*

1. A contract to purchase ten barrels of beer per week from a brewing corporation entered into as part of an agreement for the

purchase of twenty shares of the capital stock of the corporation is not lacking in mutuality.

*Contract—Executed contract—Want of mutuality as defense— Receiving consideration.*

2. A party is not in a position to set up lack of mutuality as a defense to enforcement of a contract where he has received the consideration moving to him under the contract.

*Contract—Consideration—Validity—Public policy—Liquor laws —Act of May 13, 1887, Sec. 5, P. L. 108—Act June 9, 1891, Sec. 2, P. L. 581.*

3. An agreement by a retail liquor dealer to purchase a certain quantity of beer each week from a brewing company does not offend against public policy as declared in the statutes regulating the granting of licenses to liquor dealers, which provide in case of retail dealers that the applicant for license shall be the only person pecuniarily interested in the business, and in the case of wholesale dealers that the applicant for license is not in any manner pecuniarily interested in the profits of the business conducted at any other place in the county where any of the liquors are sold or kept for sale, if the brewing company in question has no wholesale license for the county in which the retail dealer is licensed and operates under a State license in an adjoining county. Under the contract the brewing company derived no pecuniary interest in the retail dealer's business.

*Contract — Construction — Existing circumstances — Agreement by dealer to purchase goods from manufacturer—Duration— No express limitation as to time—Right to terminate upon notice.*

4. A contract by a retail liquor dealer to purchase shares of capital stock of a brewing corporation and to purchase from the corporation a certain quantity of beer each week without any limitation as to the time he was to continue purchasing beer may not be terminated at any time upon reasonable notice, if it appears that he entered into the contract with knowledge that the corporation sought to sell its stock principally to liquor dealers, inasmuch as the evident intention of the parties was that the agreement should continue in force so long as he was engaged in the business of selling beer by retail, situated as he then was.

Mr. Justice SIMPSON filed a dissenting opinion in which Justices MOSCHZISKER and KEPHART concurred.

Argued March 3, 1919.  Appeal, No. 87, Oct. T., 1918, by plaintiff, from judgment of C. P. Allegheny Co., Jan.

T., 1916, No. 851, upon a verdict directed for defendant in case of Charles Nolle v. Mutual Union Brewing Company, a Corporation. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit to recover dividends upon shares of capital stock. Before EVANS, J.

The defendant admitted refusal to pay dividends upon plaintiff's stock and pleaded by way of set-off the amount of profits it would have made had plaintiff continued to purchase defendant's product as he had agreed to do.

The court gave binding instructions for defendant, and refused plaintiff's request for binding instructions.

Verdict and judgment for defendant for $1,669.86. Plaintiff appealed.

*Errors assigned* were rulings on evidence, answers to points, overruling plaintiff's motion for a new trial and for judgment n. o. v.

*L. Pearson Scott,* with him *A. Leo Weil,* of *Weil & Thorp,* for appellant.—The agreement is unenforceable for want of mutuality of obligation: Huber Manufacturing Co. v. Smithgall, 19 Pa. Superior Ct. 641; Schlitz Brewing Co. v. Komp, 118 Ill. App. 566; Koppitz-Melchers Brewing Co. v. Behm, 130 Mich. 649; Hudson v. Browning, 264 Mo. 58; Sigua Iron Co. v. Greene, 88 Fed. 207; Martin v. Cox, 13 Ga. App. 236.

The agreement is void, as against public policy and the statutes relative to the sale of liquor in this Commonwealth: Act May 13, 1887, Section 5, P. L. 108; Act June 9, 1891, Section 4, P. L. 258; Consumers' Brewing Co. Licenses, 20 Pa. C. C. R. 597; Bergdoll v. Talone, 42 Pa. C. C. R. 116; Muller v. Bohringer, 3 Pa. C. C. R. 144; Barrett's License, 26 Pa. C. C. R. 178.

Contracts without time limit are terminable at reasonable notice by either of the parties: Coffin v. Landis, 46 Pa. 426; McCullough, etc., Crucible Co. v. Philadel-

phia Co., 223 Pa. 336; Turtle Creek v. Pennsylvania Water Co., 243 Pa. 415; Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114.

*Donald Thompson,* with him *George H. Calvert* and *William A. Wilson,* for appellee.—The contract was not void for lack of mutuality: Edinboro Academy v. Robinson, 37 Pa. 210; Jeannette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Person & Riegel Co. v. Lipps, 219 Pa. 99; Corbet v. Oil City Fuel Supply Co., 21 Pa. Superior Ct. 80.

There was no violation of the liquor laws. Although the contract might affect the right to retain a license, it could not affect the validity of the contract arising in a collateral proceeding: Highland Brewing Co. v. Becker, 52 P. L. J. 139.

The contract was not void because indefinite as to duration: Pierce v. Tennessee Coal, Iron & R. R. Co., 173 U. S. 1; Beck v. Walkers, 24 Pa. C. C. R. 403; McKell v. Chesapeake & Ohio Ry. Co., 175 Fed. 321.

A corporation declaring a dividend because indebted to each of its stockholders in the amount of his respective share and, in this position, may set-off a debt owing by the stockholder just the same as any other creditor might do: Phila., W. & B. R. R. Co. v. Cowell, 28 Pa. 329.

OPINION BY MR. JUSTICE STEWART, May 5, 1919:

The facts of this case are not in dispute. The appellant was a licensed retail liquor dealer in the City of Pittsburgh; the appellee is a corporation having its principal office in Beaver County, engaged in the business indicated in its name. In organizing the brewing company in the year 1907 the scheme was to secure as subscribers to the capital stock, so far as practicable, persons engaged in the business of selling malt liquor, either by retail or wholesale, for very obvious reasons which will occur to any one. When the appellant was approached by the representatives of the company soliciting

stock subscriptions he was told that they were soliciting subscriptions from such dealers only; that they did not solicit subscriptions from any except such dealers as had licensed places and would engage to purchase from the brewing company a certain amount of beer each week. With a full understanding of the terms and conditions thus expressed appellant subscribed for twenty shares in the capital stock of the company, and as a part of the transaction signed the following agreement in writing— "I do further agree to purchase ten barrels of beer per week, aggregating 520 barrels per year. This agreement is conditioned upon the fact that the product delivered is of a quality equal to standard beers on the market, and is sold at a rate not higher than that ruling in the open market at the times and dates of delivery." Appellant purchased the ten barrels of beer per week from the company for about three years, up to August 13, 1910, when he ceased his purchases though he continued to be a licensed dealer. In November, 1915, he brought the present action to recover from the company the amount of dividends previously declared upon his stock, with interest thereon from the time the dividends had been declared, amounting in all to $1,055.88. The brewing company admitting the non payment of the dividends on the stock claimed to set off against the plaintiff's demand damages which it sustained in consequence of plaintiff's failure to purchase beer in the quantities agreed upon during the entire period from 13th August, 1910, to 1st November, 1914, amounting to $1,669.86 in excess of the plaintiff's demand. Neither side made any question as to the accuracy in amount of the claim of the other, providing it was recoverable. At the conclusion of the evidence the learned trial judge affirmed the point submitted on part of the defendant, that under the pleadings and evidence in the case the verdict should be for the defendant, and instructed accordingly. A verdict was rendered for the defendant in the sum of $1,669.86, and judgment thereon having been entered this appeal followed.

The assignments of error are six in number. Appellant's counsel in their brief have had no difficulty in resolving them into three, and our consideration of the case will be correspondingly limited. The first assails the validity and enforcibility of the contract evidenced by the written papers, on the ground (1) that it lacks mutuality in obligation, and (2) is void because it offends against public policy since it gives to the plaintiff, so long as he remained a liquor dealer, an illegal pecuniary interest in the business of the brewery, and the agreement to buy beer gave the brewing company an illegal pecuniary interest in the business of the retailer, and (3) that the parties having chosen to leave the period of duration of the contract—that is, the promise on part of plaintiff to purchase beer from the brewing company—without limitation as to time, the contract was terminable by either party upon reasonable notice, and that the plaintiff having chosen to terminate it after three years was no longer bound thereby. If the contract embraced nothing more than the promise of the plaintiff to purchase a given quantity of beer from the brewing company, want of mutuality might well be urged; it would then be resolved into a nudum pactum, without consideration, and unenforceable; but the promise to buy the beer was only part of the contract which included as well the agreement to purchase a given number of shares of the capital stock of the brewing company, the opportunity that was afforded him for so doing being the consideration moving. No other conclusion can be derived from the undisputed testimony of the parties present at the making of the contract, and the language employed in the written promise of the plaintiff is confirmatory that the sale of the stock and the promise to buy the beer were so connected as to constitute a single transaction. "And I do further agree" reads the agreement to buy the beer, indicating very clearly that another obligation had preceded and that the obligation to purchase beer was but part of the

entire contract which certainly embraced the stock sub-
scription. The purchase of stock by the plaintiff was
fully ratified by the brewing company and it constituted
the major part of the stock on which the dividends plain-
tiff sues for was declared. Aside from this, the defense
of want of mutuality rests on a clear misunderstanding
of the law. In Grove v. Hodges, 55 Pa. 504, it is said by
Mr. Justice Strong—"Want of mutuality is no defense
to either party, except in cases of executory contracts. It
has no applicability to an executed bargain. There are
many where the obligation is all upon one party. As to
one, the obligation was fulfilled, the contract was exe-
cuted when it was made. As to the other party it remains
executory. A consideration may be either something
done, or something to be done, or a promise itself. When
it is something already done it is idle to talk of want of
mutuality. That is to be considered only when the obli-
gations of both parties are future." Here the plaintiff
had received the stock he had bought. So much for the
want of mutuality.

The objection that the contract offends against public
policy as declared in our statutes is without any greater
merit. The public statutes regulating the granting of
licenses to liquor dealers are inapplicable in this case;
the facts show no transgression of any of them. Our at-
tention is directed to Act of May 13, 1887, Sec. 5, P. L.
108, which requires that an application for a retail liquor
license shall set forth under oath among other things—
"that the applicant is the only person in any manner pe-
cuniarily interested in the business asked to be licensed,
and that no other person shall be in any manner pecuni-
arily interested therein during the continuance of the li-
cense." This is cited as a statutory requirement trans-
gressed, since by the contract the brewing company de-
rived under it a pecuniary interest in the plaintiff's retail
business. This is a palpable non sequitur. As well say
that every person from whom the plaintiff purchased sup-
plies to replenish his stock, of whatever character, there-

by became pecuniarily interested in his business.    The other requirements in the petition for license which were supposed to show a settled policy adverse to the acquisition of a pecuniary interest in the applicant's license are to be found in the Act of 9th June, 1891, Sec. 4, P. L. 257. It is only necessary to observe that all that is there required of the applicant in this connection is that he state under oath—and that only as the application is for a wholesale license—that he is not in any manner pecuniarily interested in the profits of the business conducted at any other place in said county where any of said liquors are sold or kept for sale.    Manifestly these are without application here.    The brewing company never made application for a wholesale license for the sale of liquor in Allegheny County, and its place of business is in Beaver County, where it operates, under a State license.    We find nothing in the facts presented that will invalidate in the slightest the contract on the ground alleged.

It is next argued that even though the contract was of binding force when entered into, yet, because the period of its operation so far as concerns the obligations of the appellant to purchase beer from the brewing company was indefinitive, without limitation as to time, it was terminable by either party on reasonable notice, and the plaintiff having chosen to terminate it after three years was no longer bound thereby.    The court below held that the intention of the parties, if ascertainable, was to govern; that the intention here could safely be derived from the circumstances under which the parties contracted and the subject-matter of the agreement, and that having regarded to these the evident intention of the parties was that the agreement should continue in force so long as the plaintiff was engaged in the business of selling beer by retail, situated as he then was.    The situation continued the same with respect to both parties until 1st November, 1914, when the plaintiff discontinued his business as a retailer of malt liquors.    It was for the

period of plaintiff's default between August, 1910, and the date of his last purchase, 1st November, 1914, when the plaintiff retired from business, that the defendant sought to recover damages. The court very properly held that for such default plaintiff was liable under the contract.

In what we have said we have sufficiently discussed the several assignments of error. These are overruled and the judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE SIMPSON, May 5, 1919:

It is conceded that the contract upon which defendant relies for its claim of set-off is of a dual character, one part containing an ordinary agreement of stock subscription, by which Nolle agrees to subscribe for twenty shares of stock in the defendant company, and the other part being as follows: "I do further agree to purchase ten barrels of beer per week, aggregating five hundred and twenty barrels per year. This agreement is conditioned upon the fact that the product delivered is of a quality equal to standard beers upon the market, and is sold at a rate not higher than that ruling in the open market at the time and dates of delivery."

It seems to be conceded also that, if this was all there was in the case, Nolle's obligation to purchase would have been, as the majority opinion expresses it "terminable by either party on reasonable notice"; and this is the rule repeatedly declared by us: Coffin v. Landis, 46 Pa. 426; McCullough, etc., Crucible Company v. Philadelphia Company, 223 Pa. 336; Turtle Creek Borough v. Pennsylvania Water Company, 243 Pa. 415; Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114; but it is said "that the intention here could safely be derived from the circumstances under which the parties contracted and the subject-matter of the agreement." As those "circumstances" rest in parol, the fundamental question arises: What tribunal is to determine how far, if at all,

they compel a conclusion at variance with the legal rule above stated. It would be an affectation of learning to cite the authorities on that question, for every judge of this court has repeatedly said that unless only one inference is possible from the oral evidence, the question is for the jury. That the oral evidence admits of more than one inference here is evident from the fact that defendant in his affidavit of set-off avers the duty of Nolle to purchase the beer was to continue "so long as he could legally purchase the same, for the purpose of resale"; the court below held it "was understood to exist as long as the plaintiff, Nolle, was a stockholder and a licensed liquor dealer"; the majority opinion says "the evident intention of the parties was that the agreement should continue in force so long as the plaintiff was engaged in the business of selling beer by retail, situated as he then was"; and three of the seven judges of this court are of opinion that there is nothing in the evidence to justify a finding at variance with the rule of reasonable duration.

If it is still thought this court may itself determine the question at issue by considering the circumstances "under which the parties contracted and the subject-matter of the agreement," the record discloses the former to be as follows:

The defendant was being organized as a brewing company, which wished to sell at least part of its capital stock to retailers who would agree to purchase part of its beer. Its subscription agent called upon plaintiff and asked him to subscribe to the stock. The only evidence of what occurred between them is as follows:

"Q. When you went to see Mr. Nolle, did you explain the purposes of this organization?

"A. Yes; we explained it to Mr. Nolle the same as to every retail liquor dealer that we went to see.

"Q. What did you tell him?

"A. We said to him that we were soliciting stockholders for this brewery, and only such dealers that held a retail license and wholesalers that sold malt liquors;

we did not solicit any stock from any one except they had a licensed place and would be willing to subscribe to a certain amount of beer. Mr. Nolle agreed to that, and we explained it thoroughly, the proposition, and he signed the application for stock."

It will be noticed that nothing is said as to the time Nolle was to continue taking beer from defendant, or that the purpose of the organization was to have only venders of beer as stockholders (though it is said they were the only ones being solicited to purchase stock), or that only stockholders were to purchase defendant's beer. The absence of anything to show that Nolle agreed to be bound for an indefinite length of time, is potent evidence that it was not intended he should be, for it would have been easy to say so had it been so intended. It is evident defendant wished its stockholders who were vendors of beer to be customers for some length of time, and Nolle was willing to agree to be so, but the question is, for what length of time? On that point both the contract and the evidence are absolutely silent, and there is nothing from which it can be concluded Nolle was to be bound beyond a reasonable time, which would cover the crucial period in the corporation's existence, namely, when it was building up its trade. To assert anything more on the evidence here, is to make a contract, not to construe one.

In my judgment everything said and written is more compatible with a reasonable duration for the contract, than with an indefinite one, and therefore nothing in this record justifies a variance from the legal rule. The law of reasonable duration is in accordance with the principle that parties put all of their agreement into the writing, all prior conversations being merged therein; with the presumption that parties intend an equality of obligation, each being bound according to the same rule; with the presumption that certainty and not indefiniteness is intended, contracting parties being able to see what they can do during a reasonable length of time, but not what

lies undisclosed in the womb of the future; and because it imposes a minimum loss, discourages dissatisfaction and litigation, and leaves the parties free to contract with others, when, if ever, differences arise between them. In other words, it applies the principles upon which the "reasonable time" and the "restraint of trade" doctrines are founded, leaving to the parties the power to contract otherwise, if they see fit so to do, but not assuming that they so intend when they do not say so.

On the other hand, no reason is given why the term of plaintiff's continuance in business should be adopted instead of defendant's continuance in business, or plaintiff's ownership of the stock, or all three combined, or the reasonable duration rule above set forth, any of which could just as well be "derived from the circumstances under which the parties contracted and the subject-matter of the agreement." It is true the conclusion which limits the contract to the period while Nolle was in business at his then present location avoids some of the pitfalls which the opinion of the court below leaves open, but it suggests enough of its own to indicate the lack of safety in accepting it as a conclusion of law. As already quoted, it interprets the contract to mean it "should continue in force so long as plaintiff was engaged in the business of selling beer by retail, situated as it then was." But why "situated as it then was"? Nothing in the contract or conversation implies it. Evidently the conclusion reached would appear too forced without that clause, for otherwise the contract might continue although Nolle sold beer in other places than Pittsburgh. With it in, could he have moved next door, or into the next street and have escaped liability? Or if not, how far away must he have moved to be rid of it? Or might he have ceased to sell beer at retail the day after the contract was made and have thereby avoided it, and could he have later started again without renewing it? And is he at the mercy of defendant who may either sell or refuse to sell to him, as it chooses, he continuing bound until it

pleases defendant to release him by refusing to sell to
him further; and if the duty to sell is also to be implied,
what is the extent of the implication? Must defendant be
at its present location, or near by, or does its duty con-
tinue though Nolle and it, one or both, in the approaching
prohibition times, move to other places where beer may
be sold? And is it legally bound to brew and sell so long
as any of its numerous stockholders, who are vendors of
beer, desire it to continue doing so, though but one pur-
chaser is left and it is selling at a loss? It is no answer
to these questions to say they will be solved when they
arise, for the fact that it is possible for them to arise
under the construction the majority place on the con-
tract, makes them important in determining what the
contract really means.

From those doubts and uncertainties one can safely
turn to the rule of law above stated, for it is both certain
and equitable, and perhaps is nowhere better expressed
than by Lord Denman, in Apsden v. Austin, 5 Ad. &
Ellis (n. s.) 671, quoted and followed by us in Coffin v.
Landis, supra: "It will be found that where words of re-
cital or reference manifest a clear intention that the
parties should do certain acts, the courts have from them
inferred a covenant to do such acts, and sustained actions
of covenant for the nonperformance, as if the instruments
had contained express covenants to perform them. But
it is a manifest extension of that principle to hold that
where parties have expressly covenanted to perform
certain acts, they must be held to have impliedly cove-
nanted for every act convenient or even necessary for the
perfect performance of their express covenants. When
parties have entered into written engagements with ex-
press stipulations, it is manifestly not desirable to ex-
tend them by any implications; the presumption being
that, having expressed some, they have expressed all the
conditions by which they intend to be bound under that
instrument. It is possible that each party to the pres-
ent instrument may have contracted on the supposition

that the business would in fact be carried on, and the service in fact continued during the three years, and yet neither party might have been willing to bind himself to that effect; and it is one thing for the court to effectuate the intention of the parties to the extent to which they may have even imperfectly expressed themselves, and another to add to the instruments all such covenants as upon a full consideration the court may deem fitting for completing the intention of the parties, but which they either purposely or unintentionally have omitted.   The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized as well as liable to great practical injustice in the application.".

As already pointed out, in the present case we do not have even "words of recital or reference [which] manifest a clear [or any] intention" that Nolle should be bound for an indefinite period, yet the majority propose to bind him by doing here what we have repeatedly said could not be done.   In my judgment the courts should never add a term to a written contract, especially one in antagonism to a general rule of law on the subject, unless the term to be added appears with certainty, as inevitably arising out of the contract, and as being the only term which could be added to make the contract reasonable and certain.   Here, as above shown, the opposite conclusion is true.

I would, therefore, reverse the judgment, and award a new venire, that a jury might determine what would be a reasonable time, from and after August 13, 1910, during which Nolle should be held liable for his refusal to take the ten barrels a week as agreed upon.

Judges MOSCHZISKER and KEPHART join in this dissent.