## Price, Appellant, *v.* Confair.

Argued January 3, 1951. Before Drew, C. J., Stearne, Bell, Ladner and Chidsey, JJ.

*John C. Youngman*, with him *Candor, Youngman & Gibson*, for appellant.

No appearance was made nor brief submitted for appellees.

OPINION BY MR. JUSTICE BELL, March 19, 1951:

Defendants made a written contract with Cloverdale Spring Co. on January 17, 1941, in which defendants agreed, inter alia, to furnish to seven named distributors, one of whom was the plaintiff, "all of their requirements of bottled Pepsi-Cola". The contract was silent as to its duration and the sole question involved in the case is as to the period of the contract.

For many years prior to 1941 Cloverdale Spring Co. had granted the defendant bottling rights on a royalty basis, retaining however, the right to sell Pepsi-Cola to wholesalers and distributors in a certain area. On January 17, 1941, Cloverdale and Confair entered into a written agreement by the terms of which Confair paid Cloverdale $22,500. in lieu of all royalty payments previously contracted for and Cloverdale gave up its distribution rights in Confair's territory, thereby making Confair the exclusive bottler and distributor of Pepsi-Cola in the Williamsport area.

In order to protect Cloverdale's old customers, the contract provided: "3. The Bottler further agrees to sell to the above mentioned seven (7) distributors all their requirements of bottled Pepsi-Cola at the price of sixty cents (60¢) per case delivered to the distributors' premises or at the distributors' option at the price of fifty-seven cents (57¢) per case at the Bottler's platform in Williamsport, plus the prevailing deposit, contingent upon the above mentioned seven (7) distributors selling Pepsi-Cola for the same price and subject to the same terms and practices as the Bottler."

The contract contained no provision as to the period of time defendants would provide plaintiff and other distributors "all of their requirements of bottled Pepsi-Cola"; and the contract did not require plaintiff to purchase any specific number of cases or bottles of Pepsi-Cola annually or to continue their purchases from the defendants for any period of time whatsoever. Furthermore, the plaintiff paid nothing and gave no consideration for this contract.

Defendants furnished all of plaintiff's requirements during 1941. Plaintiff claimed that by January 1, 1942 and ever since he had built up his requirements to 100 cases of Pepsi-Cola per week. The retail selling

price was fixed by defendants at 80¢ a case, which plaintiff claimed gave him a clear profit of 20¢ per case, alleging that his overhead was in no way increased by handling Pepsi-Cola and that he had no expenses in connection therewith. In 1942 defendants began reducing deliveries to the plaintiff and assuming plaintiff's requirements were 100 cases a week, plaintiff would have been entitled to 2540 additional cases up to July 13, 1945.

On July 13, 1945, defendants notified plaintiff they would not furnish him any bottled Pepsi-Cola thereafter. On November 13, 1946, the defendants increased the retail price of Pepsi-Cola from 80¢ to 96¢ per case. This was necessitated by the war and rationing and the scarcity of materials and labor and the increased cost of materials and labor facts which were not only well known to everyone, but were proved in this case. The lower court found that the contract was not terminable at will, but remained in full force and effect so long as defendants "were situated as they then were, viz: on January 17, 1941". The court thereupon awarded plaintiff damages at 20¢ a case for all the cases defendants had failed to deliver to plaintiff, based on plaintiff's requirements of 100 cases a week from January 1, 1942 to *November* 13, 1946, or $3848.50, with interest and costs.

The lower court concluded that the situation of the defendants had changed on November 13, 1946, at which time they raised the retail selling price from 80¢ a case to 96¢ a case. Plaintiff thereupon took an appeal, contending that the contract which is silent as to its duration, is a contract for his life; that he is 69 years of age, with an expectancy of 12.11 years, so that until he is 80 years of age he is entitled to recover additional damages of 20¢ a case (with no deduction for overhead or expenses) for 100 cases a week for

an additional period of 12.11 years. Fortunately, the law is not so unjust.

While *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 296, 13 A. 2d 48, and *Hand Estate*, 349 Pa. 111, 116, 36 A. 2d 485, involved respectively a newspaper distributing business (or, as was otherwise expressed, the exclusive right to handle the Post-Gazette in Dormont) and an employment contract, the principles set forth in said cases are equally applicable to the present case. Mr. Justice STERN, speaking for the Court in *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 296, 13 A. 2d 48, aptly said: *"The general rule is that when a contract provides that one party shall render service to another, or shall act as his agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will*: Coffin v. Landis, 46 Pa. 426; Trainer v. Laird, 320 Pa. 414; Press Publishing Co. v. Reading News Agency, 44 Pa. Superior Ct. 428, 433; Willcox & Gibbs Co. v. Ewing, 141 U.S. 627. It is true that such a result does not follow in every instance, because it is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. Thus contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time or some particular period inferred from the nature and circumstances of the undertaking. Illustrations are to be found in Weidman v. United Cigar Stores Co., 223 Pa. 160, Nolle v. Mutual Union Brewing Co., 264 Pa. 534, and Rossmassler v. Spiel-

berger, 270 Pa. 30; see also 4 Williston on Contracts (rev. ed.), section 1027A (3), p. 2852."*

Although plaintiff, as we have seen, gave no consideration for the contract on which he is suing as a third party beneficiary, and although he never contracted to purchase any cases or even bottles from defendants for any time whatsoever, he nevertheless contends that the defendants are bound to supply him with all his requirements for the balance of his life, although the contract contains no such provision. For this proposition he relies on *Nolle v. Mutual Union Brewing Co.*, 264 Pa. 534, 108 A. 23. This was an exceptional case which was decided on its own particular facts and as appears from the dissenting opinion of Mr. Justice SIMPSON and inferentially from the Court's opinion in *Slonaker v. Publishing Co.*, supra, was not intended to change the general rule of law.

We find no intention of the parties in the present case to compel the defendants to supply the plaintiff with all of plaintiff's requirements of Pepsi-Cola for the balance of his life.

Judgment affirmed.

---

\* Italics ours.