# School District of Township of Oil Creek et al.
# v. School District of Rome Township

*Herbert E. Varnum*, for plaintiffs.

*F. Joseph Thomas*, for defendant.

*Kenneth W. Rice*, for Ralph Hummer and Raymond Foley, minority members of school district of Rome Township.

MOOK, P. J., October 29, 1954.—In this declaratory judgment proceeding we are called upon to decide

whether or not a joint school contract entered into by several contiguous school districts lying in the Counties of Crawford and Venango under the provisions of article XVII of the Public School Code of March 10, 1949, P. L. 30, is rendered invalid by the lack of a definite termination date.

On July 10, 1952, all the school districts which are parties to this proceeding entered into a joint school contract wherein it was agreed that joint schools be established and maintained by the joint school board of the aforesaid school districts in accordance with the school laws of Pennsylvania, under the name of the Titusville Area Joint Schools.

Paragraph 5 of the contract provided that:

"The costs of operation of the joint schools, shall be shared on a pro rata basis according to the average daily membership of pupils enrolled from each district. Until the average daily membership is finally computed at close of the school year when adjustment shall be made, the cost of operation, for the school year, shall be shared on a pro rata basis according to an estimated daily membership."

Paragraph 7 further provided:

"All costs of capital expenditures shall be apportioned among the districts according to the market value of real estate as determined by the State Tax Equalization Board, and in effect during the year that such payments are due; except new school buildings built and used by one or more school districts joining herein, but by less than all of them, construction costs therefor shall be apportioned as above among the districts joining in the use of the said new buildings."

The only provision relating to termination of the contract is in paragraph 10, which provides:

"This agreement shall continue until amended or terminated by a majority vote of each board: provided, however, that in the event of amending or

terminating by any or all of the said boards, that the indebtedness or rental commitments made by the Joint Board, and each board a party thereto, shall be provided for."

Following the execution of the contract, the several districts began operation of their schools under the provisions of the contract and still continue to do so. However, dissension arose concerning the location of a new elementary school to be erected in the district and when the joint board voted to locate this proposed new school in the Borough of Hydetown instead of Rome Township, the School Board of Rome Township voted to withdraw from the joint district. The withdrawal action was rescinded at a meeting held on February 12, 1954, following the filing of certain petitions purporting to have been signed by voters of Rome Township, but thereafter, to wit, on May 28, 1954, the Rome Township board again voted three to two to withdraw from the joint district. Actually the resolution adopted at that time authorized the solicitor for the board to get Rome Township out of the jointure unless the (joint) board will revise its policy by locating a school in Rome Township.

On August 9, 1954, the solicitor for the Rome Township board, by letter addressed to the president of the joint board, gave formal notification of the withdrawal of the Rome Township board from the Titusville area schools and Titusville Area Joint School Board.

Thereafter on August 19, 1954, the remaining members of the jointure filed this petition for a declaratory judgment setting forth the foregoing facts and prayed that the court "1. Construe the terms and provisions of the joint school agreement dated July 10, 1952, and the statutes of the Commonwealth of Pennsylvania, appertaining thereto, and to enter a judgment or decree that the said agreement has not been legally terminated as to the school district of the Township of

Rome" and "2. To grant such other and further relief as the nature and exigencies of the case may require and as your honorable court may deem necessary and proper."

On September 2, 1954, defendant School District of the Township of Rome filed an answer to the petition where it averred:

1. That the contract was invalid and not binding upon the School District of Rome Township by reason of the fact that it is vague and indefinite in its terms and has no time limit.

2. The directors of Rome Township were induced to sign the contract because of specific and distinct promises and representations that a school would be erected in Rome Township in connection with the area plan.

A hearing was fixed by the court for September 23, 1954, which was duly held on that date and the case thereafter came before the court for argument on September 29, 1954, and is now before us for disposition.

Article XVII of the Public School Code of March 10, 1949, P. L. 30, which substantially reënacts the pertinent provisions of the Act of May 18, 1911, P. L. 309, art. 10, secs. 1801 to 1808, incl., is the competent legislative enactment for the establishment of joint schools.

Section 1701 of the 1949 code (24 PS §17-1701) provides:

"The board of school directors in any two or more school districts may establish, construct, equip, furnish, and maintain joint elementary public schools, high schools, consolidated schools or any other kind of schools or departments provided for in this act. The cost of establishing, constructing, equipping, furnishing, and maintaining such joint schools or departments shall be paid by the several districts establishing the same, in such manner and in such proportion as they

may agree upon. No joint school or department shall be established without receiving the affirmative vote of a majority of the members of the board of school directors in each district establishing the same. The action of the several boards establishing and maintaining such joint schools or departments shall be recorded in full in the minutes of the respective boards."

It is further provided in section 1703 as follows:

"No joint school or department of any kind shall be established, unless the several districts intending to establish the same shall first enter into and record in their respective minutes a written agreement, by and among themselves agreeing that such proposed joint school or department shall be established and maintained by the several districts, in such manner and proportion, and upon such terms as the several districts may then agree upon, and no change shall be made therein without the consent of each school district first obtained, by the affirmative vote of a majority of the school directors thereof."

Section 1708 of the statute which is entitled "Discontinuance" further provides:

"The several school districts establishing any joint school or department may, at any time by a majority vote of the school directors of their respective districts, discontinue any such joint school or department. The property belonging thereto, when discontinued, shall, unless otherwise agreed upon by the several districts, be disposed of and distributed to and among them in the same proportion as it was originally contributed."

It therefore cannot be contended, that under the provisions of the foregoing legislation, it was not lawful for the several school districts which are parties to this proceeding to enter into a joint contract of the nature and tenor of the contract in this case. Rather the question is whether such a contract once entered into in accordance with the provisions of the statute

does not at once become invalid and ineffective because no fixed termination date is included therein although the statute itself does not require such a provision. It seems to us, as the late Chief Justice of the United States, Edward Douglas White, used to say that merely to state such a proposition is to refute it.

Here we have a contract entered into specifically in accordance with the enabling statute and specifically providing for discontinuance or termination in the manner provided by the statute. Now are we to say that such a contract is invalid because something else has not been added which the statute does not require? We don't think so. Moreover we don't think that the contract is vague, indefinite and lacking a termination date, but on the contrary submit that the agreement is certain in that it continues in force until terminated by the majority vote of each of the school boards involved.

It is true that the Supreme Court of this Commonwealth has held in two cases: viz., Irwin Borough School District v. North Huntingdon Township School District, 358 Pa. 78, and Butler Township School District v. Butler City School District, 374 Pa. 96, that a joint school contract is not rendered invalid by the inclusion of a period of limitation, but we find nothing in either of these decisions which holds that the absence of such a provision vitiates the contract. On the contrary we agree with the Court of Common Pleas of Northumberland County when it said in the case of Phillips v. School District of Township of Little Mahanoy, 22 Northumb. 44, 58, that:

"A careful reading of the majority opinion in (the Irwin case) can lead to no other conclusion but that the insertion of a time limitation during which an agreement establishing a joint school district shall remain in force is an exception rather than the general rule."

In the Butler Township v. Butler City case, supra, the question was raised as to whether a perpetual contract was void, but the court held it was unnecessary to consider this question for the reason that the contract then expired at the end of three years if a contemplated merger failed. Defendant argues that the only remaining inference from this decision is that the court would have been obliged to declare the contract invalid had it not been for this provision relating to expiration. To reach this conclusion, however, we must read something into the decision that isn't there and we see no justification for so doing.

It is further argued that to hold contracts of this type valid is an unjust and illegal encroachment upon the rights and powers of future school boards. This same argument could of course be advanced even if there was a fixed period of duration in the contract of a reasonably long period—for example, 30 years as in the Irwin case. There may be reasons why agreements establishing joint school districts should be of a limited duration but, on the other hand, as suggested by the court in the Northumberland County case there likewise are cogent reasons why such agreements should only be discontinued upon the majority vote of the respective districts entering into the joint school. The requirement that a fixed period of duration must be included in any such contract might well impede many necessary and desirable building programs but also cause confusion and chaos at the expiration of the contract, to say nothing of the effect upon hundreds of such contracts already in existence pursuant to the statute without a fixed termination date.

Furthermore under the decisions of the appellate courts of this Commonwealth, it is not the law that because no period of duration is stated, a contract must be held void for uncertainty. This contention came before the court in the case of Rossmassler et al.

v. Spielberger et al., 270 Pa. 31, where the court said at page 41:

". . . the courts will always deduce the term from the nature of the subject-matter, if it is at all possible so to do. 'The law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves. The maxim, Id certum est quod certum reddi potest, applies': 6 Ruling Case Law 645. 'Apart from contracts which, from their inherent nature, imply a power of revocation, it would seem that the intention of the parties to an agreement, that it should be perpetual and without limit as to duration, could not be more properly expressed than by silence as to any time limit or power of revocation. Although there appears to be some authority to the contrary, the rule seems to be that where no limitation is expressed in the agreement, neither party can terminate it without the consent of the other, unless the making of the contract itself indicates with sufficient clearness that the parties must have intended some other determination': Ibid. 895."

In certain types of agreements, such as agreements where one party contracts to render service to another, or act as his agent, when there is no definite time or period of duration specified, the courts have held that the contract may be terminated by either party at will: Slonaker v. P. G. Publishing Company, 338 Pa. 292; Hand Estate, 349 Pa. 111; Price v. Confair, 366 Pa. 538. But even in such cases these decisions also hold that such a result does not follow in every case, because

it is the intention of the parties which is the ultimate guide, and in order to ascertain the intentions, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they have in view and the nature of the subject matter of the agreement: Price v. Confair, supra, p. 542.

Taking into consideration these factors in the present case, we can come to no other conclusion than that the parties intended exactly what they said in agreeing that the contract may be terminated only by majority vote of all the boards involved. This conclusion is not only in accordance with the objects the parties had in entering the contract, but as we have already mentioned is strictly in accordance with the provisions of the statute authorizing the formation and termination of such contracts.

Defendant further contends however that paragraph 10 of the contract specifically permits the termination of the contract by one school district without the consent and approval of the remaining members of the joint district.

This paragraph, which has previously been set forth in this opinion, provides:

"This agreement shall continue until amended or terminated by the majority vote of each board, provided, however, that in the event of amending or terminating by any or all boards, that the indebtedness or rental commitments made by the joint board, and each board a party thereto shall be provided for."

It is contended by defendant that the second sentence of this clause means that any individual school board may terminate the agreement without the consent of the others.

We think, however, this second sentence was only meant to apply in case of termination by a member of the district with the approval of all the remaining districts as provided in the first sentence. For exam-

ple, one of the districts which originally entered the Titusville Joint Schools was released by action of all the boards, and this sentence relates to necessity of making provision for indebtedness or rental commitments for which the released district may be in part responsible. To hold otherwise would be to say that the first sentence of section 10 was meaningless and would render the entire contract totally ineffective. If any member could withdraw at will, the joint district would be powerless to engage in a building program, as no loaning agency could risk dealing with such an unstable governmental body.

Here again the contract must be construed according to the probable intention of the parties, the objects in view, and the nature of the subject matter of the agreement. Clearly the object in view was to form a stable governmental agency capable of procuring better educational facilities for the children of the area through a combination of several districts than could be obtained by the individual districts themselves, hence it would seem utter folly to permit any district to withdraw at will when such a construction would render the jointure utterly incapable of accomplishing said objectives.

Defendant finally contends that the members of its board were induced to enter into the agreement by false representations that a school would be created in Rome Township.

It is unnecessary to consider whether or not oral testimony concerning statements made prior to the execution of the contract is admissible as the testimony adduced by defendant at the hearing falls far short of supporting its contention.

Much of the testimony related to events which took place at a meeting of the joint school board on February 12, 1954. Petitions were presented at this meeting which were alleged to have been procured by mis-

representation which induced the Rome Township board by a vote of 4 to 1 to rescind its previous action in withdrawing from the joint district. As we previously mentioned the Rome Township board later rescinded this action and formally withdrew. However the contract was entered into on July 10, 1952, hence the representations made to members of the board inducing them to rescind a prior withdrawal on February 12, 1954, are immaterial if the board had no right to withdraw from the jointure in the first place.

The only evidence offered to show that any member of the Rome Township board was induced to sign the original agreement on July 10, 1952, by representations of others was the testimony of Mr. Fink, president of the board, who said that at a meeting in the high school at Titusville, the superintendent of the Titusville School District, Marshall Fisher, addressed the meeting wherein he "held out to us that the elementary schools would not be taken out of the district." This Mr. Fisher denied and was corroborated by two members of the Rome board, Mr. Foley and Mr. Hummer. But, even if the statement had been made, there is no evidence that Mr. Fink or any other board member was induced to sign the contract by reason of such statement and, furthermore, any statement made by Mr. Fisher would not be binding upon the members of the joint board as he is only their employe and has no vote. Mr. Fink must have known that it would be the function of the entire board to determine matters of policy and the location of schools and that no one person could speak for that entire group. Accordingly we find no competent evidence whatsoever that the members of the Rome Township School Board were induced to sign the contract by false and fraudulent representations.

For the reasons hereinabove set forth we enter the following

514

## Decree

And now, October 29, 1954, it is ordered, adjudged and decreed that the School District of the Township of Rome may not withdraw from the Titusville Area Schools and the Titusville Area Joint School Board without the consent of a majority of each of the other school boards of the school districts included in the joint school districts and any attempt to withdraw by the Rome Township School District without such consent is void and of no effect whatsoever; it is further ordered, adjudged and decreed that the joint school contract of June 10, 1952, entered into between the School Districts of the Boroughs of Centerville and Hydetown, Townships of Oil Creek and Rome, the City of Titusville, Crawford County, and the Township of Cherrytree, Venango County, is in existence and effect and under the management of the Titusville Area Joint School Board, and judgment is hereby entered in favor of plaintiffs and against defendant; the costs of this proceeding to be paid by defendant.