## Simcoe v. Huszar

*Clayton T. Hyman*, of *Hyman, McCarthy and Engel*, for plaintiff.

*Leon H. Kline*, for defendant Huszar.

*David Allan Eisenberg*, of *Martin H. Philip*, for defendants Smida.

LAVELLE, *J.*, April 25, 1979—Before the court are defendants' preliminary objections to plaintiff's amended complaint in equity. The facts giving rise to the present action, as stated in plaintiff's pleading and admitted as true for the purpose of the demurrer, may be briefly summarized as follows:

1. Defendant Huszar, prior to the institution of the within proceeding, held a malt and brewed beverages distributor's license pursuant to the provisions of section 431(b) of the Pennsylvania Liquor Code of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-431(b).

2. Pursuant to the aforesaid license, defendant Huszar held an appointment from C. Schmidt and Sons, Inc., a brewer of malt beverages, granting Huszar the exclusive right to sell at wholesale Schmidt's beer products in designated portions of Carbon and Monroe Counties.

3. Plaintiff holds a similar license, franchise, or appointment to sell Schmidt's beverages in a territory contiguous to that of Huszar's.

4. Plaintiff alleges that during July of 1978, he

entered into an oral contract with Huszar whereby the latter agreed to "sell" to plaintiff Huszar's appointment from Schmidts for a total consideration of $30,000; no sale of goodwill or of tangible business assets of Huszar was contemplated under the agreement; only the license or permit under section 431 of the Liquor Code was to be transferred.

5. According to plaintiff, the mechanics of the transfer were to have been that Huszar would notify Schmidts that it was relinquishing its appointment and that Huszar would cause Schmidt to appoint plaintiff in Huszar's place.

6. During plaintiff's negotiations with defendant Huszar, plaintiff also met with defendant Robert Smida, another beverage distributor, and was allegedly told by Smida that he (Smida) was desirous of purchasing other assets of Huszar but was not interested in being appointed as a distributor, and allegedly Smida encouraged plaintiff to pursue the distributorship rights with Huszar.

7. Plaintiff prepared an agreement reducing to writing the terms of his alleged oral contract with Huszar and presented same to Huszar; said agreement, however, was never executed by Huszar.

8. On or about July 20, 1978, both plaintiff and defendant Huszar communicated with Schmidts for the purpose of advising Schmidts of the intended transfer of the distributing rights to plaintiff and were advised to send Schmidts a letter informing them of the transfer; a copy of said letter was attached to plaintiff's complaint as Exhibit C but it is not clear from the record whether such letter was ever signed by Huszar or ever mailed to Schmidts.

9. On the same date, defendant Huszar referred plaintiff to Huszar's attorney and that day plaintiff went to see said attorney, who advised plaintiff that

he would prepare a more formal document setting forth the agreement and would have it ready within eight to ten days.

10. Plaintiff heard no further from Huszar's attorney and following numerous attempts to reach him, plaintiff was finally advised by defendant Huszar, on or about August 23, 1978, that defendant would not sell the distributorship to plaintiff but instead was going to sell it to defendant Robert E. Smida.

11. The distributorship allegedly has been transferred to Smida's wife, defendant Mary E. Smida.

In his complaint, plaintiff seeks specific performance of his alleged agreement with defendant Huszar as well as other relief.

All defendants have filed preliminary objections to plaintiff's complaint in equity, essentially alleging the following: 1. Plaintiff's claim is barred by the Statute of Frauds; 2. Plaintiff has an adequate remedy at law and hence no equity jurisdiction lies; 3. The complaint fails to state a cause of action upon which relief can be granted; and 4. The complaint is improperly verified. We will dispose of these objections seriatim.

## DISCUSSION

### I. The Statute of Frauds

Both defendants have invoked section 1-206 of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §1-206, commonly known as the Statute of Frauds, which provides that:

"Except in the cases described in subsection (2) [relating to the sale of goods, securities and security

agreements] of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars ($5,000) in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent."

Two related but distinct questions are raised by this objection: (1) Whether the alleged agreement between plaintiff and defendant Huszar is a "contract of sale" within the language of section 1-206; and (2) Whether the distributorship license involved herein is "personal property" within the language of the same section.

No definition of sale is contained in section 1-206 and we are therefore relegated to the sales article of the code for a definition of that term. See Baldassarre v. Rare Metals Derivatives, Inc., 444 Pa. 100, 282 A. 2d 262 (1971). According to section 2-106, a sale "consists in the passing of title from the seller to the buyer for a price." Huszar's appointment from Schmidts contained no language indicating an intention that it was to continue for any particular period of time. Hence, it was terminable at will by either party: Weilersbacher v. Pittsburgh Brewing Company, 421 Pa. 118, 218 A. 2d 806 (1966); Price v. Confair, 366 Pa. 538, 79 A. 2d 224 (1951). The contemplated transaction between plaintiff and Huszar, as outlined in plaintiff's brief, was that the parties would contact Schmidts and confirm that Schmidts was agreeable to appointing the plaintiff to Huszar's territory. Huszar would then relinquish his existing appointment and Schmidts

would then appoint plaintiff to the distributorship which Huszar formerly held. Whatever the true nature of the transaction might have been, it is clear that it was not a sale within the language of the Uniform Commercial Code since nothing of value was being transferred directly from Huszar to plaintiff.

Rather, Huszar, for a consideration, was agreeing to use his influence with Schmidts to have plaintiff appointed to his (Huszar's) territory. Nothing of value was to pass directly from Huszar to plaintiff, and the consideration which was to pass to Huszar was more in the nature of a finder's fee than a price. A similar analysis was used by the United States District Court for the Eastern District of Pennsylvania in Stone v. Krylon, Inc., 141 F. Supp. 785 (E.D. Pa. 1956). There plaintiff averred that defendant had orally promised him that if we would aid defendant in developing a satisfactory special product for the coating of asbestos shingles, defendant would grant plaintiff the exclusive distributorship for the product throughout the United States for a minimum period of ten years. Plaintiff did develop such a product, but defendant defaulted in its oral promise to give plaintiff the distributorship, and plaintiff filed suit. Defendant filed a motion to dismiss the complaint contending that the alleged oral contract was unenforceable because of the Statute of Frauds. In denying the defendant's motion, the court observed:

"The contract here, however, is not a contract of sale. In essence it is a contract involving two principal elements: (a) plaintiff's performance of certain personal services for defendant and (b) defendant's promise to grant plaintiff the exclusive

agency to sell certain goods. This is a contract of employment, the consideration for the services being not wages or salary but a valuable franchise. . . . Since this in substance is not a sales contract, the statute of frauds contained in the Sales Act does not apply." 141 F. Supp. at 785-786.

Inasmuch as we have determined that the alleged agreement between plaintiff and Huszar was not a "contract of sale" within the language of section 1-206 of the Uniform Commercial Code, it becomes unnecessary for us to dispose of the question as to whether the license, franchise or distributorship sought to be transferred to plaintiff constitutes "personal property" within the language of the same section.

## II. The Propriety of Equity Jurisdiction

Defendants' second contention is that plaintiff has an adequate and complete remedy at law in the form of an action for damages, as to defendant Huszar in an assumpsit action for breach of contract, and in the case of defendants Smida, a trespass action for tortious interference with business relations. Accordingly, defendants urge that equity is without jurisdiction to entertain plaintiff's complaint.

It is well established, of course, that equity does not have jurisdiction where a full, complete and adequate nonstatutory remedy at law exists: Barco, Inc. v. Steel Crest Homes, Inc., 420 Pa. 553, 218 A. 2d 221 (1966); Carelli v. Lyter, 430 Pa. 543, 244 A. 2d 6 (1968). It is equally well settled, however, that the mere existence of a legal remedy will not oust equitable jurisdiction since the legal remedy must be as "efficient, certain and prompt" as the

equitable remedy: Pennsylvania Railroad Co. v. Bogert, 209 Pa. 589, 59 Atl. 100 (1904). Thus where the measure of damages is such that plaintiff's damages cannot be precisely determined because they are necessarily speculative and indeterminate, the legal remedy is neither adequate nor complete and equity jurisdiction will lie: Strank v. Mercy Hospital of Johnstown, 383 Pa. 54, 117 A. 2d 697 (1955). Moreover, where the subject matter of an agreement is an asset which is peculiarly unique in its nature or its equivalent cannot be purchased on the open market, specific performance of an agreement to convey will be granted. In this regard, it has been held that equity will grant specific performance of an agreement to sell or assign a liquor license: Pichler v. Snavely, 366 Pa. 568, 79 A. 2d 227 (1951).

It appears to the court from the pleadings herein that the distributorship or franchise sought by plaintiff is sufficiently unique and intangible in nature that its precise monetary worth is not capable of definite ascertainment. Accordingly, monetary damages alone would not sufficiently compensate plaintiff for his loss and assuming that he can otherwise establish his entitlement to relief, plaintiff would be entitled to a decree of specific performance and other equitable relief. Accordingly, defendants' second objection is without merit.

### III. The Demurrer

Defendant Robert E. Smida demurs to count 2 of plaintiff's amended complaint on the ground that it fails to state a cause of action upon which relief can be granted. Defendant relies upon Glenn v. Point Park College, 441 Pa. 474, 272 A. 2d 895 (1971), for

the proposition that a cause of action against a defendant based upon unlawfully inducing a breach of contract must include averments that the acts were done for the purpose of causing the specific type of harm involved, must have been done without privilege and that the harm must have actually resulted from such acts. However, our review of plaintiff's amended complaint in its entirety convinces us that he has complied with the pleading requirements set forth in Glenn. The remaining points set forth in defendants' demurrer have already been disposed of in this opinion.

## IV. The Adequacy of Plaintiff's Verification

The fourth and final preliminary objection, raised by defendant Huszar, is that plaintiff has failed to comply with the verification requirements of Pa.R.C.P. 1024 in that a verification made partly "upon personal knowledge as to a part and upon information and belief as to the remainder," is ambiguous and defective in that it does not specify which averments are made upon knowledge and which are made upon information and belief.

While defendant's objection is technically correct, it is also inconsequential and the defect will be ignored inasmuch as it is clear from the complaint as to which averments have been made upon the plaintiff's personal knowledge. See Eazor Express v. Mickey, 32 Beaver 184 (1972).

For the foregoing reasons, we enter the following

## ORDER

And now, to wit, April 25, 1979, upon consideration of the preliminary objections of defendants to

plaintiff's amended complaint in equity and the briefs filed in support thereof and in opposition thereto, it is hereby ordered and decreed that said preliminary objections be, and the same hereby are dismissed, and defendants shall file their answers to plaintiff's amended complaint within 20 days from the date of this order.